## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**BRITNI JONES,**

        **Plaintiff,**

**vs.**                                            **Civ. No. 20-441 JCH/SMV**

**LEGACY BURGERS, LLC d/b/a**
**BURGER KING, and DERRICK YOUNG**
**Individually and as agent of LEGACY**
**BURGERS, LLC d/b/a BURGER KING,**

        **Defendants.**


### MEMORANDUM OPINION AND ORDER

This case is before the Court on *Plaintiff's Motion for Remand and for Attorney's Fees* [Doc. 8]. Defendants filed a response [Doc. 15] and Plaintiff replied [Doc. 19]. After having reviewed those documents as well as the Complaint [Doc. 1-1], the Notice of Removal [Doc. 1], and the evidence attached to the briefs, the Court concludes that the motion to remand should be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Britni Jones ("Jones") is a former employee of Defendant Legacy Burgers, LLC ("Legacy") who claims that Legacy unfairly terminated her employment. On March 12, 2020, Jones filed her Complaint in the First Judicial District Court, Santa Fe County, New Mexico. The Complaint asserts claims for breach of implied contract and prima facie tort, and it requests relief in the form of "all lawfully recoverable compensatory and punitive damages" as well as attorney's fees. However, consistent with the procedural rules applicable in New Mexico state courts, the

Complaint does not demand a specific sum. *See* N.M.R. Ann. Rule 1-008 (stating that a "complaint shall not contain an allegation for damages in any specific monetary amount").

On May 8, 2020, Legacy filed a Notice of Removal in this Court, noting that co-defendant Derrick Young ("Young") had not yet been served with the Complaint. Legacy averred that this Court had diversity jurisdiction in accordance with 28 U.S.C. § 1332. Specifically, it alleged complete diversity in that Legacy is a California limited partnership whose partners are all citizens of the State of California, Young is a Nevada resident, while Jones is a citizen of New Mexico. It further alleged that Jones' Complaint put more than $75,000 at issue. In support of that statement, Legacy pled facts regarding Jones' rate of pay and the number of hours she typically worked, attaching evidence in support. From those numbers, Legacy calculated Jones' potential claims for back pay and front pay to be a little over $100,000. It further noted that emotional distress damages in employment termination cases often exceed $50,000, alleged that punitive damage awards often equal compensatory damages, and averred that reasonable attorney's fees for a case of this type could amount to $60,000 (200 hours at a rate of $300 per hour), for a total amount in controversy over $200,000.

On June 9, 2020, Jones filed her motion for remand asserting that Legacy "has not and cannot show that the requisite amount in controversy exists." Jones argues that Legacy's calculation of damages is "total conjecture." She points to the fact that three days *after* removal, she made a settlement demand for $45,000. [Doc. 8-1]. Further, Jones attached an affidavit by her attorney as an exhibit to her motion to remand. [Doc. 8-2]. That affidavit, also dated June 9, stipulates that Jones is not seeking more than $75,000 in damages exclusive of interest and costs and that, if she were to obtain a judgment against defendants in an amount greater than $75,000, exclusive of interests and costs, her counsel would not execute on the amount over $75,000. [Id.].

2

Jones has also provided evidence of Legacy's June 29, 2020 offer to settle the case for $4,000, arguing that this offer demonstrates what Legacy truly believes the case to be worth. [Doc. 19-1].

## **LEGAL STANDARD**

In order for a federal court to have diversity jurisdiction, the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). The "amount in controversy" has been defined by the Tenth Circuit Court of Appeals as "an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). When the plaintiff's initial pleading does not state the amount in controversy, the notice of removal may assert the amount in controversy. 28 U.S.C. § 1446(c)(2)(A). However, at the pleading stage—that is, in the notice of removal—the removing party need not put forth evidence supporting the jurisdictional amount, but merely make a "plausible allegation." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation" *Id.* A defendant who removes a case to federal court under diversity jurisdiction must establish the amount in controversy (if the plaintiff did not allege a sufficiently high amount) by a "preponderance of the evidence." *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008) (internal quotation marks omitted).

The Tenth Circuit looks both to allegations in the complaint and to evidence submitted after the complaint in determining whether the criteria necessary for removal are met. *See McPhail v. Deere & Co.*, 529 F.3d 947, 955-56 (10th Cir. 2008). The Tenth Circuit explained in *McPhail* that a district court may consider evidence presented to it after a notice of removal has been filed, even if produced at a hearing on subject-matter jurisdiction, to determine if the jurisdictional requirements are met. *See* 529 F.3d at 953-54. "[B]eyond the complaint itself, other documentation

can provide the basis for determining the amount in controversy—either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward." *Id.* at 956 (citing *Meridian Secs. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006) (Easterbrook, J.)), and *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). "The Seventh Circuit, on which the Tenth Circuit has heavily relied when addressing the amount in controversy, has recognized that 'events subsequent to removal may clarify what the plaintiff was actually seeking when the case was removed.'" *Aranda v. Foamex Int'l*, 884 F. Supp. 2d 1186, 1208 (D.N.M. 2012) (Browning, J.) (quoting *Carroll v. Stryker Corp.*, 658 F.3d 675, 681 (7th Cir. 2011)). For example, where a defendant has allegedly breached a contract and the plaintiff seeks damages in an indeterminate amount, a defendant might support jurisdiction by attaching a copy of the contract, valued at more than $75,000, to the notice of removal. Or it might "introduc[e] evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands." *Meridian*, 441 F.3d at 541-42.

## DISCUSSION

Jones' motion to remand raises two issues. The first is whether Legacy has met its burden to prove the allegations in the Notice of Removal regarding the amount in controversy by a preponderance of the evidence.[1] The second is whether the parties' settlement offers and Jones' stipulation as to the amount she would collect—all made after removal—affect the Court's analysis of the amount in controversy.

---

[1] Perhaps anticipating that Jones would challenge subject matter jurisdiction, Legacy did not rest upon mere well-plead allegations in its Notice of Removal, opting to attach substantive evidence to support those allegations rather than wait until Jones moved to remand.

Starting with the second question, the Court concludes that it cannot consider either party's settlement offer or Jones' stipulation as to the amount in controversy because all occurred after Legacy had removed the case.  The district court's jurisdiction attaches at the time of removal. In *St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 293 (1938) the Supreme Court stated that when "the plaintiff after removal, by stipulation, by affidavit, or by amendment of his [or her] pleadings, reduces the claim below the requisite amount, this does not deprive the court of jurisdiction." *Id*. at 292. Once the district court's jurisdiction attaches at the time of removal, post-removal events "which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his [or her] volition, do not oust the district court's jurisdiction." *Id*. at 293. The Supreme Court explained that

> [w]e think this well established rule is supported by ample reason. If the plaintiff could, no matter how bona fide his original claim in the state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice. The claim ... fixes the right of the defendant to remove, and the plaintiff ought not be able to defeat that right and bring the cause back to state court at his [or her] election.

*Id*. at 294. Under *St. Paul* and its progeny, it is well established that once the district court's diversity jurisdiction attaches at the time of removal, a plaintiff may not subsequently divest the court of jurisdiction and force remand to state court by reducing the amount in controversy. *See Miera v. Dairyland Ins. Co*., 143 F.3d 1337, 1340 (10th Cir. 1998) (acknowledging the principle from *St. Paul* that "[o]nce jurisdiction has attached, events subsequently defeating it by reducing the amount in controversy are unavailing"); *see also Rogers v. Wal-Mart Stores, Inc*., 230 F.3d 868, 872 (6th Cir. 2000) ("We conclude that post-removal stipulations do not create an exception to the rule articulated in *St. Paul*. Because jurisdiction is determined as of the time of removal, events occurring after removal that reduce the amount in controversy do not oust jurisdiction.").

Having determined that the post-removal stipulation and settlement offer are irrelevant, the Court must next determine whether Legacy has met its burden to prove the jurisdictional amount by a preponderance of the evidence as it existed on the date of removal. Jones rejects Legacy's efforts to do so as mere speculation. However, the Tenth Circuit has specifically endorsed a removing defendant's good faith effort to estimate potential damages based on the allegations of the complaint and other documentation, including "summary judgment-type evidence." *McPhail*, 529 F.3d at 955-56. In this case, because the amount in controversy could not be ascertained based on the contents of the Complaint, Legacy was required in its notice of removal to "show how much is in controversy through other means." *Id.* at 955.

First, Legacy estimated the value of Jones' claim for back pay. Based on her hourly pay rate of $10.75 and her typical 40-hour work week, in the Notice of Removal Legacy estimated that Jones' backpay from August 8, 2019 (when it fired her) through mid-May (when she filed her complaint) to be $16,770. Legacy then added another year of backpay—or $22,360—as an estimate for how long it would take for the case to get to trial. However, based upon the affidavit she attached to her reply brief, we now know that Jones was able to mitigate her damages starting March 3, 2020, when she obtained employment at $9.75 per hour for twenty hours per week. Thus, the Court calculates Jones' backpay claim as follows. For the period of unemployment between August 8, 2019 and March 3, 2020, the value is approximately $12,900 ($10.75/hr. x 40 hours x 30 weeks). For the roughly nine-and-a-half week period between March 3, 2020 and May 8, 2020, Jones's backpay claim would be at the rate enumerated above, less pay at $9.75 per hour for twenty hours per week. This comes to $2,232, for a total backpay claim of approximately $15,132.

Because the Complaint states that Jones is claiming all lawfully recoverable damages, it is not unreasonable to assume she is making a claim for front pay as well. According to the

Complaint, Jones had worked for Legacy for seven years prior to the termination of her employment, so the Court finds Legacy's assumption of a claim for three years of front pay to be reasonable. However, any front pay claim would also be subject to mitigation. Assuming that Jones continued to mitigate her damages at the same rate as she did her back pay, damages for front pay would equal approximately $36,660 (the difference between working 40 hours per week at $10.75 per hour and $9.75 per hour at 20 hours per week over a period of three years).

The Court agrees with Legacy that for purposes of calculating the amount in controversy, one must assume that Jones is asking for emotional distress damages. However, the Court disagrees with Legacy that Jones' emotional distress claim could be worth up to $50,000. While that is true of some employment cases, those are more often cases in which the plaintiff has suffered some sort of harassment at the hands of his or her employer. In her Complaint, Jones makes no suggestion of mistreatment by Legacy, only that she was unfairly fired for something she did not do and did not know about. A more realistic estimate of any emotional distress damages would be $10,000.

Plaintiff also makes a claim for punitive damages, alleging that "Defendants' conduct was willful, malicious and in conscious disregard of Plaintiff's rights." The Court agrees with Legacy that a good rule of thumb for estimating the value of a punitive damages claim is to use an amount equal to compensatory damages, or in this case $51,792 (back pay plus front pay). All of the foregoing forms of damages total just over $113,000, more than enough to satisfy the jurisdictional requirement.

Finally, Jones makes a claim for attorney's fees. It is not clear how she could recover those, given the fact that she asserts claims for breach of implied contract and prima facie tort, and the Court is not aware of any fee-shifting provisions for those common law claims. Still, taking her

Complaint at face value, litigating an employment case such as this through trial would take a bare minimum of 150 hours. Jones' counsel is very experienced, but even if he discounted his hourly rate to $200 per hour, that would total $30,000 in fees.

In summary, as directed by the Tenth Circuit in *McPhail*, the Court has examined the contents of the Complaint, the allegations in the Notice of Removal, and the evidence submitted by the parties and determined that the amount placed in controversy in this case at the time of removal has been proven by a preponderance of the evidence and exceeds $75,000. In doing so, the Court concludes that the jurisdictional amount is satisfied and that it has subject matter jurisdiction.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion for Remand and for Attorney's Fees* [Doc. 8] is **DENIED**.


_____
SENIOR UNITED STATES DISTRICT JUDGE